### FIRST FEDERAL LINCOLN BANK, Plaintiff,

v.

### The UNITED STATES, Defendant.

No. 95–518C.

United States Court of Federal Claims.

Oct. 20, 2005.

---

Edward L. Lublin, Blank Rome LLP, Washington, D.C., for plaintiff. Paul M. Honigberg, Lawrence S. Sher, and Katia I. Fano, Blank Rome LLP, of counsel.

William G. Kanellis, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were Stuart E. Schiffer, Deputy Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director, for defendant. Scott D. Austin, Elizabeth A. Holt, Jeffery T. Infelise, John N. Kane, Jr. and John J. Todor, Commercial Litigation Branch, of counsel.

### OPINION

MARGOLIS, Senior Judge.

*First Federal Lincoln Bank v. United States,* 58 Fed.Cl. 363 (2003) ("*First Federal II*"), resolved the issue of whether the government and plaintiff, First Federal Lincoln Bank ("Lincoln"), entered into binding contracts with respect to Lincoln's mergers with three failing savings and loan associations or thrifts. *Id.* at 364. The Court found that a contract existed between Lincoln and the government with respect to Lincoln's merger with Great Plains Federal Savings and Loan Association of Falls City, Nebraska ("Great Plains"), but that contracts did not exist with

respect to Lincoln's mergers with Tri–Federal Savings and Loan Association of Wahoo, Nebraska ("Tri–Federal") and First Federal Savings and Loan Association of Norfolk, Nebraska ("Norfolk"). *Id.* at 369–70. Plaintiff now seeks reconsideration of the Court's ruling on the Tri–Federal and Norfolk transactions. Plaintiff contends that the Federal Circuit decision in *Fifth Third Bank of Western Ohio v. United States,* 402 F.3d 1221 (Fed.Cir.2005), effected a substantive change in controlling law by clarifying the standards against which the Tri–Federal and Norfolk transactions must be considered, and thereby directs a finding that Lincoln and the government entered into valid contracts with respect to these two transactions, which the government breached when Congress passed the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). In opposing plaintiff's motion, defendant contends that *Fifth Third* did not change the controlling law but, rather, strengthened this Court's earlier determination that the Tri–Federal and Norfolk mergers were not contractual. After careful consideration of the briefs and oral argument, the Court DENIES plaintiff's motion.

### DISCUSSION

Plaintiff requests review of the *First Federal II* decision pursuant to Rule 60(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). RCFC 60(b)(6) empowers the Court, "[o]n motion and upon terms that are just," to relieve a party "from a final judgment, order, or proceeding" for a variety of specific reasons, or for "any other reason justifying relief from the operation of the judgment." Because RCFC 60(b)(6) empowers the Court to grant relief from a *final* judgment, and *First Federal II* constituted an interlocutory decision dismissing two of Lincoln's three breach of contract claims, RCFC 60(b)(6) is not the correct rule under which to proceed. *Accord, Farr Man & Co., Inc. v. M/V Rozita,* 903 F.2d 871, 874 (1st Cir.1990)(stating that "[i]t is ... well settled that Rule 60 applies only to final judgments."). The correct rule under which this Court may review its *First Federal II* decision is RCFC 54(b), which states that "any

order or other form of decision ... which adjudicates fewer than all the claims ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

## I. *The Federal Circuit's Decision in Fifth Third*

In *Fifth Third,* the Federal Circuit held that based on the "totality of the evidence and the circumstances" contractual obligations existed between Fifth Third's predecessor-in-interest, Citizens Federal Bank FSB ("Citizens") and the government regarding the utilization of supervisory goodwill from Citizens' acquisition of four failing thrifts between 1982 and 1985 as an accounting treatment for capital compliance. 402 F.3d at 1223, 1235. This decision reversed the Court of Federal Claims, which had concluded that the four transactions were not contractual because the only written evidence corroborating witness testimony was contained in "routine" agency documents. *Id.* at 1228.

As found by the trial court, each transaction followed the same general pattern, which began with the Federal Home Loan Bank of Cincinnati ("FHLB–Cincinnati") contacting Citizens to propose a supervisory merger with a failing thrift. *Id.* at 1225. In each case, after entering into a merger agreement expressly conditioned upon obtaining approval by the Federal Home Loan Bank Board ("FHLBB"), Citizens and the failing thrift submitted a merger application to FHLB–Cincinnati. *Id.* at 1225, 1227. At trial, Citizen's president and FHLB–Cincinnati's chief supervisory agent both testified that they engaged in extensive negotiations prior to each of the four transactions. *Id.* at 1226–27. Citizen's president testified that before finalizing each Merger Agreement, he requested from FHLB–Cincinnati cash assistance in exchange for taking on each failing thrifts' negative net worth. *Id.* FHLB–Cincinnati's chief supervisory agent testified that following each request he informed Citizens that instead of cash it could book supervisory goodwill as an asset, and amortize it over an extended period of time. *Id.*

FHLB–Cincinnati conditionally approved each transaction by issuing a Bank Board Resolution. When FHLB–Cincinnati conditionally approved the first of Citizen's four transactions, the Bank Board Resolution required Citizens to submit an opinion from its independent accountant that:

(a) indicate[d] the justification under generally accepted accounting principles [GAAP] for use of the purchase method of accounting, (b) specifically describe[d] any goodwill arising from the purchase to be recorded on Citizens' books, and (c) substantiate[d] the reasonableness and amounts of such goodwill and related 30 year amortization period and method.

*Id.* For each of the three subsequent transactions, Citizens and FHLBB exchanged documents similar to those in the first transaction described above. *Id.* at 1227. These documents, however, lacked some of the detail provided in the documents from the first transaction. Most notably, the Bank Board Resolution issued by FHLB–Cincinnati that conditionally approved the three subsequent transactions did not specify the length of the goodwill amortization period. *Id.* Nevertheless, the documents made it clear that Citizens and FHLB–Cincinnati agreed to an extended amortization period. *Id.* at 1232. In each case, upon receipt of these opinions, FHLB–Cincinnati submitted the proposed transaction to the FHLBB for final approval. *Id.* at 1226. "FHLBB approved each transaction, and Citizens accounted for each, including the use of the purchase method, the amortizing of goodwill over an extended period, and the counting of goodwill toward its regulatory capital requirements." *Id.*

After considering these facts and *Winstar* precedence, the Federal Circuit explained that "the question becomes what to believe regarding the parties' understanding of special treatment of goodwill as a term of the contract," and that a contract exists "when the evidence demonstrates that, in light of the discussions between the Government and the acquiring thrift with regard to protections affecting capital requirements, including supervisory goodwill, the parties agreed that the acquiring thrift was to be given the favorable accounting treatment of superviso-

ry goodwill and its amortization." *Id.* at 1231. Analyzing Citizen's first acquisition, the court found, based on trial testimony detailing the negotiations between the parties regarding the use of supervisory goodwill as an asset in lieu of cash assistance, and the related transactional documents, that "the record supports [Citizens'] contention that there was a contractual agreement ... regarding special treatment of supervisory goodwill." *Id.*

Analyzing the three remaining acquisitions, the court found that "[a]lthough the written documents are not as detailed as those in the [first] transaction, it is evident from the pattern and circumstances of these transactions that the special treatment of supervisory goodwill was a central part of the agreements ..." *Id.* at 1232. The "pattern and circumstances" the court pointed to included trial testimony showing that before each transaction Citizens and FHLB–Cincinnati negotiated the special treatment of supervisory goodwill and that each party understood that for the final three transactions they were agreeing to the same terms as those of the first transaction. *Id.* The court stated that the "clincher" was the evidence showing that "the transactions would not have occurred without an agreement for special treatment of goodwill because Citizens would have fallen out of capital compliance immediately after each transaction." *Id.*

## II. *Effect of Fifth Third on this Court's Liability Decision*

Plaintiff contends that *Fifth Third* refocused the inquiry regarding contract formation by emphasizing the "context of the times and the essence of the transactions" in *Winstar*-related cases, thereby compelling reconsideration and reversal of this Court's holding that Lincoln's mergers with Tri–Federal and Norfolk were non-contractual. Defendant, on the other hand, asserts that *Fifth Third* does not change controlling law because the Federal Circuit's decision is based on standard principles of contract interpretation applied by the Supreme Court in *United States v. Winstar Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996), and by this Court in the liability decision. This Court agrees with defendant that *Fifth Third* presents no change in controlling law.

While the Federal Circuit in *Fifth Third* noted that FHLBB's reaction to the crisis in the savings and loan industry created a "pattern of arrangements" between FHLBB and acquiring financial institutions that "often had contractual dimensions," the court based its decision upon the standards set by previous *Winstar*-related cases. *Id.* at 1231. The court discussed its holdings in *California Fed. Bank, F.S.B. v. United States*, 245 F.3d 1342 (Fed.Cir.2001), *D & N Bank v. United States*, 331 F.3d 1374 (Fed.Cir.2003), *Anderson v. United States*, 344 F.3d 1343 (Fed.Cir.2003), *First Commerce Corp. v. United States*, 335 F.3d 1373 (Fed.Cir.2003), *LaSalle Talman Bank, F.S.B. v. United States*, 317 F.3d 1363 (Fed.Cir.2003), *Barron Bancshares, Inc., v. United States*, 366 F.3d 1360 (Fed.Cir.2004), and *La Van v. United States*, 382 F.3d 1340 (Fed.Cir.2004). The court then explained that "[a]s shown by the cases just discussed, this court has ultimately found the Government liable for breach of contract ... when evidence demonstrates, in light of the discussions between the Government and the acquiring thrift ... the parties agreed that the acquiring thrift was to be given the favorable accounting treatment of supervisory goodwill and its amortization." *Fifth Third*, 402 F.3d at 1231. Consistent with this standard, the court determined in the case before it that the totality of the evidence and circumstances demonstrate that the parties intended for extended amortization of goodwill to be an integral element of the bargain, and therefore a contract creating such an obligation was formed. *Id.* at 1235. Plaintiff's argument that *Fifth Third* changes the law controlling *Winstar*-related cases is therefore without merit.

## III. *The Great Plains, Tri–Federal and Norfolk Transactions*

Plaintiff asserts that like the transactions in *Fifth Third*, it should be equally evident from the pattern and circumstances of the Great Plains, Tri–Federal and Norfolk transactions that the use of purchase accounting and long-term amortization of goodwill was an integral part of the Tri–Federal and Nor-

folk transactions, just as it was for the Great Plains transaction. In support, the plaintiff notes that under *Fifth Third*, the written documents for the Tri–Federal and Norfolk transactions need not be as detailed as they were for the initial transaction to find that a contract was formed. The plaintiff also contends that the context in which the Tri–Federal and Norfolk transactions took place and the economic consequences facing Lincoln had the use of purchase accounting and long-term amortization of goodwill not been contractually agreed to, outweigh any lack of documentary evidence of such an agreement. This Court disagrees.

The differences between the Tri–Federal and Norfolk transactions as compared to the Great Plains transaction have been discussed extensively in both Judge Wilson's and this Court's opinions. *See First Federal Lincoln Bank v. United States,* 54 Fed.Cl. 446 (2002) (*"First Federal I"*) and *First Federal II,* respectively. Judge Wilson found in *First Federal I* that the documentation surrounding the Great Plains transaction provided clear evidence of mutual intent to contract, whereas the "bargained-for" aspect of a contract was not readily apparent in the Tri–Federal and Norfolk mergers. *First Federal I,* 54 Fed.Cl. at 459. As Judge Wilson explained:

> [t]he use of purchase accounting and amortization of goodwill were sufficiently crucial to the merger with Great Plains that Lincoln included these terms into the merger agreement by integrating the letter of agreement in principle by reference. However, at first blush, *the absence of any reference to definitive amortization periods in the merger agreements* of Tri–Federal and Norfolk, suggest that amortization of goodwill was not central to these two mergers, as compared to the utilization of purchase accounting, which was explicitly referenced in the applications.

*Id.* at 454 (emphasis added). Further, whereas FHLBB's conditional approval letter of the Great Plains transaction "reflected FHLBB's understanding of Lincoln's terms and conditions, as illustrated by its grant of net worth forbearance and request for a description of intangible assets, 'including good-

will . . . to be recorded' on Lincoln's books," there is no reference to goodwill or forbearance in the conditional approval letters for the Tri–Federal and Norfolk transactions. *Id.* at 456.

In *First Federal II* this Court found it significant that, in addition to the merger application and FHLBB's conditional approval letters for the Great Plains merger, Lincoln and the FHLBB extensively negotiated the terms of the agreement. *First Federal II,* 58 Fed.Cl. at 368–69. *See also First Commerce Corp. v. United States,* 53 Fed.Cl. 38, 47–48 (2002)(stating that "[w]hile negotiations do not by themselves establish a contract, their presence can provide additional support."). For the Tri–Federal and Norfolk transactions, however, the parties did not negotiate any of the terms, and Lincoln submitted merger applications that failed to incorporate by reference the agreement in principle, which mentioned goodwill. *First Federal II,* 58 Fed.Cl. at 369–70. This Court held, therefore, that the Great Plains transaction was not a "cookie cutter deal" for the Tri–Federal and Norfolk transactions. *Id.* at 370.

Unlike the mergers in *Fifth Third* and the Great Plains transaction, the pattern and circumstances of the Tri–Federal and Norfolk transactions evidence that the special treatment of goodwill was *not* a central part of the agreements. The Tri–Federal and Norfolk mergers involved no pre-merger negotiations regarding the treatment of goodwill and Lincoln submits no evidence that it ever communicated a request for special treatment of goodwill with respect to the Tri–Federal and Norfolk mergers. During oral argument, when asked by the Court whether there were any direct discussions about supervisory goodwill for the Tri–Federal and Norfolk mergers, Lincoln admitted that there were none, claiming that "it was enough that they negotiated a transaction in Great Plains and that the pattern and circumstances created in Great Plains also governed Tri–Federal and Norfolk." Tr. at 8:12—25. There needs to be "something more" than merely "a cloud of evidence that could be consistent with a contract to prove a

contract and enforceable contract rights." *D & N Bank*, 331 F.3d at 1377.

Also, in *Fifth Third* the documents used in each of the four transactions expressed the importance of the treatment of goodwill but differed regarding the length of the extended amortization period. *Id.* at 1227. In contrast, and unlike the Great Plains transaction, the merger applications for the Tri–Federal and Norfolk transactions failed to incorporate by reference the agreement in principle that referenced special treatment of goodwill. (Joint Appendix Regarding Unassisted Transactions (J.A.), Tabs 30 & 40). Further, the merger agreements for these two transactions mention purchase accounting, but fail to mention goodwill or amortization. (J.A., Tabs 28 & 38). Thus, except for the agreements in principle, (J.A., Tabs 27 & 37), the documents leading up to the Tri–Federal and Norfolk mergers do not mention goodwill at all. At oral argument, plaintiff even went as far as admitting that "there were no documents where they said we think the terms of Great Plains governed Tri–Federal and Norfolk, but it was clear to the parties." Tr. at 14:23—15:2. Further, when the Court inquired as to the non-existence of goodwill in the documents, plaintiff suggested that it could be implied from the mention of purchase accounting. Tr. at 19:14—20. The documents leading up to each of the *Fifth Third* mergers, by contrast, all mention goodwill, only differing with respect to the length of the amortization periods.

It is true, of course, that the Tri–Federal and Norfolk mergers were part of "a larger context in which the Government enlisted the aid of a major sector of the banking industry." *Fifth Third*, 402 F.3d at 1233. The Federal Circuit's analysis in *Fifth Third*, however, gave proper weight to the context *as well as* the evidence, continuing to apply standard principles of contract interpretation as required in all *Winstar*-related cases. *Id.* While context is relevant to contract interpretation, it alone "does not create a presumption in favor of any particular outcome." *Id.* While this Court appreciates the context in which these agreements were reached, it cannot ignore the distinctions between the Tri–Federal and Norfolk transactions as compared to the *Fifth Third* and the Great Plains transactions.

Finally, *Winstar* precedent does not require the Court to interpret the economic irrationality of a transaction to mean that the government made a contractual commitment to the acquiring thrift in every case. *Winstar*, 518 U.S. at 863, 116 S.Ct. 2432 ("[a]lthough one can imagine cases in which the potential gain might induce a party to assume a substantial risk that the gain might be wiped out by a change in the law, it would have been irrational *in this case* for" the acquiring thrift to have done so. (emphasis added)). The Federal Circuit in *Fifth Third* did not embrace economic irrationality as the sole determinant of the existence of a contract. The court explained that "[the premise that economic rationality cannot create contracts] is of course true, but not the point. *More to the point* is the fact that there is evidence in this case sufficient to show a contract for long-term amortization of regulatory capital ... and [there is] no evidence that Citizens failed to protect itself with enforceable contract rights." *Fifth Third*, 402 F.3d at 1233 (emphasis added). In this case, Lincoln did not negotiate for special treatment of goodwill or submit documents shifting the risk of regulatory change to the government for the Tri–Federal and Norfolk transactions. Without additional evidence that Lincoln attempted to protect itself from a regulatory change, the Court cannot find the existence of a contract based on economic irrationality alone.

## CONCLUSION

Plaintiff fails to point to any change in controlling law that requires reconsideration of the Court's decision in *First Federal II*. This Court continues to agree with its original conclusions that no contracts were formed with respect to Lincoln's acquisitions of Tri–Federal and Norfolk. Accordingly, plaintiff's motion for reconsideration is DENIED.